# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:06-cv-00075-W

| | |
|---|---|
| RONALD and SHARON FRAHM, DOUG CLINE, EDWARD L. SARTIN, EDWARD A. SARTIN, CHRISTOPHER T. SARTIN, ROBERT P. SARTIN, SR., ROBERT P. SARTIN, JR., RICHARD D. SARTIN, SARTIN SERVICES, INC., MARIE M. MCGINNESS SARTIN, TED GRIFFIN, G. DONALD LAYNO, and JOHN MICHAEL WILSON, ) ) ) ) ) ) ) ) ) ) | ) OPINION |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| JOHN D. MACIK, ) ) | |
| Defendant. ) ) | |

THIS MATTER is before the Court on Defendant's Appeal of the Bankruptcy Court's Order declaring Plaintiffs' debts to be nondischargeable. For the reasons stated herein, the Court affirms the bankruptcy court.

## I. BACKGROUND

The parties do not dispute the facts in this case. John D. and Paula C. Macik filed a voluntary Chapter 7 bankruptcy petition on June 6, 2005. On September 6, 2005, Plaintiffs filed a complaint objecting to the dischargeability of their debts owed by Mr. Macik under 11 U.S.C. § 523(a)(2) and (4). This complaint and its attendant adversary proceeding are the subject of this appeal.

Prior to filing bankruptcy, Mr. Macik and others formed an internet-based, NASCAR related business. Plaintiffs invested in this company. Subsequently, the business failed, and Plaintiffs lost their investments. As a result, Plaintiffs filed a complaint in Guilford County Superior Court against

Mr. Macik and other defendants, alleging breach of fiduciary duty, constructive fraud, fraud, negligence and gross negligence, breach of contract, misappropriation, conversion of funds, misrepresentation, and unfair and deceptive trade practices ("State Court Action"). During the course of litigation, Macik and the other defendants engaged in several dilatory acts, including failing to respond to Plaintiffs' discovery requests. Despite a court order from the superior court, Macik and the defendants failed to comply or respond. Subsequently, Macik and the defendants failed to appear in court for a hearing on Plaintiffs' motion for sanctions. Accordingly, the superior court struck the defendants' answers and entered judgment on all claims against the defendants, including Mr. Macik. The judgment in the State Court Action found Macik (and the other defendants) to be jointly and severally liable to Plaintiffs for actual damages of $213, 200. These damages were trebled to $639,600, and Plaintiffs were awarded costs and attorneys' fees.

The Order and Judgment contained specific findings of fact and legal conclusions. Notably, the Order and Judgment determined two matters material to the present proceeding. First, the state court found that the defendants' failures to make discovery and their failures to comply with the subsequent order (requiring them to make discovery) were willful acts. Additionally, the state court found that the defendants, including Mr. Macik, were guilty of "willful and wanton conduct" in violation of Chapter 75 of the North Carolina General Statutes. N.C. Gen. Stat. § 75-1, et. seq.

After entry of the Order and Judgment, Plaintiffs attempted to execute against Mr. Macik. Mr. Macik, however, filed the bankruptcy petition that is the subject of this case. Plaintiffs subsequently filed this adversary proceeding, seeking a declaration that the debts established in the State Court Action are nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and (6).

Following a hearing, the bankruptcy court concluded, as a matter of law, that Mr. Macik was collaterally estopped from relitigating the claims in the State Court Action and also, that the Rooker-Feldman doctrine barred relitigation of the matters previously considered in the State Court Action. Accordingly, the bankruptcy court ruled the debts were nondischargeable and granted summary judgment for Plaintiffs. Mr. Macik now appeals the bankruptcy court's Order.

## II. STANDARD OF REVIEW

The applicable standard of review on an appeal is set forth in Bankruptcy Rule 8013, which provides: "On an appeal the district court . . . may affirm, modify or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." The bankruptcy court's legal determinations are reviewed *de novo*. See In re Varat Enterprises, Inc., 81 F.3d 1310, 1314 (4th Cir.1996).

## III. ANALYSIS

The bankruptcy court found the Defendant's debt to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), and (6). Section 523(a) provides, in relevant part that the following types of debts are nondischargeable:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>     (B) use of a statement in writing--
>         (i) that is materially false;
>         (ii) respecting the debtor's or an insider's financial condition;
>         (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>         (iv) that the debtor caused to be made or published with intent to deceive; or

>. . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>. . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

The debt in this case entails a default judgment entered in the State Court Action against Defendant Macik for $639,600.00 on Plaintiffs' claims for breach of fiduciary duty, constructive fraud, fraud, negligence and gross negligence, breach of contract, misappropriation and conversion of funds, misrepresentation, and unfair and deceptive trade practices. The bankruptcy court ruled that the default judgment on these claims against a Macik collaterally estopped the bankruptcy court from relitigating the claims to determine dischargeability. Review on appeal by this Court turns on the consideration of whether the default judgment (entered as sanctions for failure to make discovery) conclusively establishes that the issues raised by the relevant sections of § 523(a) were "actually litigated" and "necessary to" the State Court Action.

In Pahlavi v. Ansari, 113 F.3d 17 (4th Cir. 1997), the court considered whether the district court properly held that a default judgment entered by a Virginia state court as a sanction for discovery violations was entitled to collateral estoppel in a subsequent federal bankruptcy case. In affirming the district court, the Fourth Circuit held that the evidence before the state court and the fact the parties engaged in "extensive and two-sided litigation," including discovery, on the relevant issues demonstrated that the claims that were the subject of the default judgment were "actually litigated." The Ansari decision applied Virginia law, and the Virginia Supreme Court had already addressed the issue of whether and under what circumstances a default judgment can be regarded as "actual litigation" of "essential" issues in a prior action for collateral estoppel purposes. Although

North Carolina courts have not specifically addressed this issue, the Court nonetheless finds the analysis in Ansari particularly controlling.

Defendant Macik argues Ansari is inapplicable to the case at bar, and that the Fourth Circuit case of M&M Transmissions v. Raynor, 922 F.2d 1146 (4th Cir. 1991), provides that, under North Carolina law, a default judgment cannot have a preclusive effect on the determination of dischargeability by the bankruptcy court. Raynor, however, is easily distinguishable from the case at bar. In Raynor, the record showed the parties engaged in *no litigation* whatsoever. Nothing indicated the parties conducted discovery; no evidence showed the state court conducted any hearings; and default judgment was ultimately entered because the defendant failed to show up for trial because he was unaware of the trial date. Thus, the defendant in Raynor demonstrated that the claims upon which default judgment was entered were not "actually litigated." Moreover, nothing in the facts of Raynor indicate the default judgment was entered as a result of willful conduct, which is what we have in the case at bar. Accordingly, for the reasons stated herein, as well as the analysis in Ansari also distinguishing Raynor, 113 F.3d at 22, this Court finds Raynor distinguishable and not controlling to the issue before the Court.

Following the analysis in Ansari, as explained below, collateral estoppel bars relitigation of the claims against which judgment was entered in the State Court Action because: (1) North Carolina law provides that a default judgment can have a preclusive effect on subsequent litigation; (2) the claims in the State Court Action were "actually litigated" - because the parties engaged in two-sided litigation - and were essential to the judgment; (3) even if the claims were not "actually litigated," collateral estoppel applies because Macik had an "opportunity to litigate," and by his own wrongful

acts, failed to take advantage of that opportunity; and (4) public policy requires and the law of other jurisdictions supports such a result.

It is well-settled that when "determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum's state law of collateral estoppel . . . ." Id. at 113 F.3d at 19 (citing Hagan v. McNallen, 62 F.3d 619, 624 (4th Cir. 1995) (quoting Allen v. McCurry, 449 U.S. 90, 96 (1980)). North Carolina law provides that in order for collateral estoppel to bar a party's subsequent claim: "(1) the issues to be concluded must be the same as those involved in the prior action; (2) the issues must have been raised and actually litigated in the prior action; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment." McCallum v. N.C. Coop. Extension Serv., 142 N.C.App. 48, 54, 542 S.E.2d 227, 233 (quoting King v. Grindstaff, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973)), appeal dismissed and disc. rev. denied, 353 N.C. 452, 548 S.E.2d 527 (2001).

Similar to Ansari, the parties in the matter before the Court agree the default judgment meets the majority of these requirements, with the exception of the second prong. Any preclusive effect to be given to the default judgment turns on whether the parties "actually litigated" the claims upon which judgment was entered. Unlike Virginia, North Carolina courts have not considered this specific issue. North Carolina courts, however, have ruled that a default judgment can have a preclusive effect on subsequent litigation. See Holly Farm Foods, Inc. v. Kuykendall, 114 N.C. App. 412, 442 S.E.2d 94 (1994) (noting that *res judicata* applied in case where default judgment was entered and finding that judgment on claims in original case were binding in the subsequent action);

Naddeo v. Allstate Ins. Co., 139 N.C. App. 311, 533 S.E.2d 501 (2000) (ruling that a default judgment barred relitigation of issues in second declaratory action claim).

Most significant to the Ansari analysis of "actually litigated" was the fact the parties had been engaged in litigation prior to the entry of default judgment. Likewise, in the case at bar, Macik and the other defendants served responsive pleadings to both the complaint and amended complaint. Further, Macik *willfully* refused to comply with discovery requests and orders, and nothing shows the default judgment was entered as a result of Macik being unaware of the court's orders.

In Ansari, the state court judgment specifically resolved factual issues, thus indicating that the claims of fraud and fiduciary duty were a "necessary part of the judgment in the prior proceeding." Additionally, the state court's subsequent consideration and findings of punitive damages were sufficient for collateral estoppel purposes because the state court specifically found "proof of misconduct or actual malice or such recklessness or negligence as to evince a conscious disregard of the rights of others." Ansari, 113 F.3d at 21. The findings in Ansari are parallel (albeit more specific) to the findings in the State Court Action in this instance.

By entering default judgment on Plaintiffs' claims for breach of fiduciary duty, fraud, misappropriation and conversion of funds, the State Court Action essentially resolved the same issues necessary to show undischargeability under § 523(a)(4). As recognized in Ansari,

> "A defalcation under 523(a)(4) is "misappropriation of trust funds or money held in any fiduciary capacity; [or the] failure to properly account for such funds." In re Niles, 106 F.3d 1456, 1460 (9th Cir.1997) (quoting Black's Law Dictionary 417 (6th ed.1990)). "[A] 'defalcation' for purposes of this statute does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.' " Quaif v. Johnson, 4 F.3d 950, 955 (11th Cir.1993) (citing Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510, 512 (2d Cir.1937) (Learned Hand, J.)).

113 F.3d at 20.

Here, by entering judgment on Plaintiffs' claim for breach of fiduciary duty, the court impliedly found that Macik was a fiduciary and owed such corresponding duties to Plaintiffs.[1] Furthermore, by finding that Macik was entitled to judgment on the claims of fraud (which, in this context is actual fraud, as opposed to constructive fraud, which was separately plead) and misapprorpriation and conversion of funds, the state court found that Macik's conduct went beyond the minimum threshold required to prove "defalcation." See id. Accordingly, the bankruptcy court properly found that the State Court Action resolved the elements under §523(a)(4), and the issues were therefore "actually litigated" such that collateral estoppel barred relitigation of this issue. Accordingly, the bankruptcy court correctly found the debt to be nondischargeable under § 523(a)(4).

The judgment entered in the State Court Action resulted a judgment also specifically found that Plaintiffs "*have shown* willful and wanton conduct on behalf of the Defendnants," including Macik. (Emphasis added). This statement indicates the state court evaluated Plaintiffs' allegations, which further supports a finding that the claims were "actually litigated." See Ansari, 113 F.3d at 20 ("the parties litigated Ansari's status as a fiduciary before the state court and that court decided the issue"). Such a specific finding also demonstrates the "determination made of those issues in the prior action [were] necessary and essential to the resulting judgment." McCallum, 142 N.C.App. at 54, 542 S.E.2d at 233.

Further, by entering judgment in favor of Plaintiffs on their claim for "fraud" (separately and in addition to constructive fraud) supports a finding that the debt is nondischargeable under §

---

[1] The Court recognizes that breach of fiduciary duty, without more, is insufficient to establish that Macik committed a fraud or defalcation for purposes of § 523(a)(4). Entry of judgment on the claim for breach of fiduciary duty, however, establishes that a fiduciary relationship existed, which is required under § 523(a)(4). Thus, the Court mentions entry of judgment on this claim for the sole purpose of showing the state court found the existence of a fiduciary duty.

523(a)(2)(A). See Harrell v. Merchant's Express Money Order Co., 173 F.3d 850 (4th Cir. 1999) (unpublished) ("To sustain acclaim under §523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that the debtor made misrepresentations, with the intention and purpose of deceiving the creditor, that the creditor relied on the misrepresentations, and that it sustained a loss as a proximate result of the misrepresentations or fraud.") (citing In re Eashai, 87 F.3d 1082, 1086 (9th Cir. 1996)). It is well-settled that, "The most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of 'any debt' respecting 'money, property, services, or . . . credit' that the debtor has fraudulently obtained, including treble damages assessed on account of the fraud." Cohen v. de la Cruz, 523 U.S. 213, 217 (1998) (citing Field v. Mans, 516 U.S. 59, 61, 64, 116 S.Ct. 437, 439, 441, 133 L.Ed.2d 351 (1995) (describing § 523(a)(2)(A) as barring discharge of debts "resulting from" or "traceable to" fraud)) . Therefore, by entering judgment on Plaintiffs' claim for fraud, among other claims, the issues raised to determine dischargeability under § 523(a)(2)(A) was "actually litigated" and "necessary to" the judgment entered in the State Court Action.

Although the Court finds that the causes of action stated in the complaint were "actually litigated" in the State Court Action, it is important to note that North Carolina courts have impliedly recognized an "opportunity to litigate" standard in collateral estoppel analysis. See Rymer v. Estate of Sorrells, 127 N.C. App. 266, 488 S.E.2d 838 (1997) (approving Fourth Circuit's "opportunity to litigate" standard stating that "collateral estoppel precludes the relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed the full and fair opportunity to litigate that issue in an earlier proceeding") (quoting In Re McNallen, 62 F.2d 619, 624 (4th Cir. 1995)). "[T]he party opposing issue preclusion has the burden to show that there was no full and fair opportunity to litigate issues

in the first case." Miller Bldg. Corp. v. NBBJ North Carolina, Inc., 129 N.C. App. 97, 100, 497 S.E.2d 433, 435 (1998). Here, Defendant cannot satisfy this burden since he clearly received an opportunity to litigate, but, by his volition, terminated his opportunity. Additionally, if Macik was dissatisfied with the sanctions and the effective result of default judgment, he could have sought relief from judgment from the superior court, which he did not do. Therefore, the Court is satisfied that Macik cannot prove there was "no full and fair opportunity to litigate issues" in the State Court Action, thus further supporting application of collateral estoppel. Id.

Finally, the Ansari court noted, "Recently, the Fifth, Eleventh, and Ninth Circuits have held that when a party has appeared and litigated a matter, a default judgment subsequently entered for discovery violations can act as collateral estoppel in a later case." Gober v. Terra - Corporation (In re Gober), 100 F.3d 1195, 1205-06 (5th Cir.1996) (fact that state court default judgment was entered "only after Gober had repeatedly impeded the course of the proceedings by refusing to comply with discovery and by defying court orders" bolstered court's conclusion that the bankruptcy court "properly afforded collateral estoppel effect" to the state default judgment); Bush v. Balfour Beatty Bahamas, Ltd., 62 F.3d 1319, 1325 (11th Cir.1995) ("Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the [proceedings] a district court [may] apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior litigation."); FDIC v. Daily (In re Daily), 47 F.3d 365, 368 (9th Cir.1995) ("A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication.").

As eloquently stated by the bankruptcy court in the order that is the subject of this appeal, "A default occasioned by misbehavior in a state court proceeding in which the party is participating has a preclusive effect." To rule otherwise would obliterate the need for parties to comply with state court orders by essentially encouraging a party facing significant liability in a state court action to refuse to engage in discovery and willfully disobey court orders, but be allowed to subsequently file bankruptcy seeking to fully litigate the claims in the bankruptcy court. This result is inequitable and frustrates the purpose of the bankruptcy court, which sits as a court of equity. The Fourth Circuit has repeatedly "emphasized that we do not allow 'perpetrators of fraud . . . to hide behind the skirts of the Bankruptcy Code.'" In Re Biondo, 180 F.3d 126, 130 (4th Cir. 1999); see also In Re Rountree, 475 F.3d 215 (4th Cir. 2007). Accordingly, this Court affirms the bankruptcy court's order to the extent it ruled Macik's debt to Plaintiffs is nondischargeble.[2]

For the reasons stated herein, the Court AFFIRMS the bankruptcy court Order finding Macik's debt to Plaintiffs arising out of the Superior Court Order and Judgment entered March 4, 2004, to be deemed nondischargeable. The Clerk is DIRECTED to close the case.

Signed: March 29, 2007

Frank D. Whitney
United States District Judge

---

[2] Because the Court affirms the bankruptcy decision on this issue, the Court declines to address the alternative basis for nondischargeabillity: the Rooker-Feldman doctrine.